Six cases, two of them are being submitted just on the briefs without oral argument later today. They are Appeal No. 06-3102, French v. Merit System Protection Board, and Appeal 06-3199, Robenstein v. Merit System Protection Board. On the four-case argument list, we'll hear argument first in Appeal 06-1064, O2 Micro Intl v. Monolithic Power. Mr. Stanley, good morning. Welcome. Please proceed. May it please the Court. Where local patent rules require final infringement contentions to be filed before the close effects of discovery, it's imperative that district courts be required to apply a correct good cause analysis when resolving motions to amend those contentions based on discovery that's obtained after that deadline. In reviewing decisions under local patent rules, I believe this Court has both the authority and the obligation to make sure that those decisions comply both with the generally applicable procedural rules and with this Court's substantive patent law. What's the difference between the standard you say ought to be used and the one the Ninth Circuit uses? I'm not saying that the good cause standard or the abuse of discretion standard applies differently in patent cases than it does in any other case decided by federal district courts. What I am saying is that the decisions about good cause and about exercising discretion must be informed by this Court's substantive patent law when making those decisions. With respect to the first ground for reversal here, what I'm saying in the district court in not finding good cause to apply to allow the open lamp theory to be added to this case, it misapplied the shifting sands analogy from the Atmel decision that has often been cited with respect to claim construction. My position is under substantive patent law, there's a difference between requiring an early claim construction and requiring contentions before fact discovery. But there was a lack of diligence here, right, on the open lamp theory. Wasn't there a lack of diligence in amending the infringement contentions? No, my position is that the district court's findings that held that O2 micro unreasonably delayed in presenting the open lamp theory are clearly erroneous. Why? Okay. The only evidence of record in this case are the declarations that were supported in support of O2 micro's motions. Now, I don't think there's any dispute that O2 didn't know the facts necessary to assert the open lamp theory as of the time that the final infringement contentions were due in January. In fact, even the district court agreed that O2 micro didn't have the facts necessary to assert that theory until the Moyer deposition five weeks after that deadline in February 24th and 25th of 2003. But what about the delay between February and May or June if we rely on the formal submission of altered infringement contentions? What did the affidavits do by way of explaining some justification for that delay of several months? The affidavits pointed out that, I mean, in a sense, new infringement theories are not built overnight. The mere fact that the Moyer deposition for the first time explained how the open lamp feedback circuit worked does not mean that there's a button that's pushed on the word processor that puts out the contentions. Dr. Erickson and the attorneys for O2 were required to take the new information and develop it in the context of all the other strategies that are going on in the litigation. That may be so, but my question is what did the affidavits allege by way of explanation week by week or month by month from the day of the Moyer deposition to the day that there was a final submission of an altered infringement contention? The declarations pointed out that between the time of the Moyer deposition, there were over 30 other depositions in the case. There was the normal motions practice going on. There were, in fact, there were even other depositions. Well, I don't doubt that the lawyers were very busy, but it seems to me that that doesn't really address the issue. The issue is the development of the open lamp theory. Now, you suggested a minute ago that one of the things that the lawyers needed to do once they had the Moyer deposition results was to go back to the expert and run it by him. That sounds logical enough. But my question is whether the affidavits account for the time because there's quite a delay from February 23rd, I think it was, until late May or late June, whichever date we want to choose. And I'm trying to learn how well that time was accounted for to show a good excuse. Well, the declarations point out that there was time going on. Now, the definition of diligence is what is reasonable under the circumstances. Which affidavit addresses the diligence question? Is there an affidavit from counsel, from the experts? Yes, there are affidavits of both Charlene Morrow, who was lead counsel at trial for O2, filed a declaration that's at, let's see, it's A1574 through 79, which addresses some of the things that were going on during that time. In fact, there's an earlier declaration of Ms. Morrow that's at 952 to 955. What's the latter citation to 952 to 55? Is that Morrow again? It is Morrow again. Okay. And there was a second affidavit, did you say? Yeah, there's another affidavit of Ms. Morrow. There's an affidavit of Ms. Mews. Wait a minute, are there three Morrow affidavits or two? Two of Morrow, one of Mews. There's also a declaration of Dr. Erickson in support of the motion summary judgment where he explains why he didn't, that goes to the ISANS theory. But the point is, the only evidence of record are the declarations from O2's counsel and expert. There's no contrary declaration. Where do these declarations give us an explanation for the delay? Okay. At 954, starting with paragraph 10. 954? 954, paragraph 10. Ms. Morrow says, under the heading, newly discovered evidence reveals new infringement theories. The parties took substantial deposition discovery over the course of the last four months that took the total of 34 days of depositions. These depositions represent all but three of the deposition days. It explains that the depositions included the deposition of the circuit designer of MPS's parks. Paragraph 12 points out that the production of schematics were incomplete and the motion to compel is pending. Well, all that's directing to is that, as Chief Judge Michelle said, the lawyers were busy. But that doesn't explain why it took them two months to come up with new infringement contentions. Well, the diligence is what's reasonable under the circumstances in a multifaceted litigation. Remember, there were two patents of MPS litigation in this. Both the attorneys and Dr. Erickson are responsible both for the infringement contentions with respect to this new theory, also the invalidity contentions on the other. And overarching all this is the fact that the parties, particularly O2 was working under the belief that the parties were negotiating to exchange amended contentions on both sides at the close of discovery. But there was no agreement on that. I'm not saying that the agreement, I'd have a different case here if there wasn't in fact an enforceable agreement. The point is what's reasonable under the circumstances, when the parties believe at the end of discovery that there's going to be amendments based on the things that are necessitated by discovery. And that's what MPS is. You may have a point that general busyness with daily depositions or some very high level of activity like that is part of the background facts that any adjudicator would have to give some weight to meet the test, which sounds reasonable, of what's reasonable under the circumstances. But can you help us understand exactly who had to do what to develop the Moyer statement of February 23rd into a new infringement contention? You're not suggesting that everyone who was deposed was deposed on open lamp I don't think, are you? No, that's exactly my point. There's a lot of other issues going on in the case at the same time. Can you help us without conceding that general busyness should be counted, can you help us to understand what had to be done to develop the Moyer deposition into a fileable infringement contention? Well. Under the affidavits, you know, not. Right. I mean, the affidavits like that are unrebutted in this case with respect to what was happening. There's no contrary evidence. I'm only asking if you can trace the open lamp theory chronologically based on the affidavits, if you can't just say so. No, I need to rely on the affidavits that I've cited to you with respect to the fact that there was a lot of depositions and other things going on. Dr. Erickson was required, amid his job as a professor and the multiple tasks he had on the proceeding, to develop a theory. Now, if you remember when MPS objected for the first time to O2's. But where does it say that it took him two months to develop the theory? The declaration doesn't say it takes two months, but the evidence to me, I mean, I guess it's, my experience when I file a brief is that it's basically done the night before I file it. I believe that these infringement contentions were filed when they were finished. And as soon as, the fact that it took him a couple months, as long as there was continual effort going on during that period of time, and it was reasonable under the circumstances, that's diligence. It doesn't have to be. Where does the declaration say there was continual effort going on during the two months to develop this theory? The declaration does not say that, you know, exactly word for word. I think that the only. But does it say it at all? It says that there was a lot of activity going on, but it does not say that directly. But I believe under the only declarations that are in evidence, the only thing on the other side is attorney argument. I believe that it would be clear error to conclude anything else. But Mr. Stanton, it's certainly your burden, your side's burden, to show diligence. And so the fact that there were X, Y, and Z affidavits that were totally unrebutted doesn't seem to produce the result. The affidavits either show diligence or don't, and the fact that they were unrebutted doesn't give them content they don't have. So they only say what they say, and we can read them closely, and we will. But the fact that they were unrebutted seems to me to be beside the point. Well, the other fact that goes to this is when MPS objected to the amended contentions, they complained that it would take them months to develop rebuttal theories. And if their complaint is it would take them months to develop rebuttal theories based on their own parts, the fact that it took us months to develop the theory, and when I say months, it's only plural in the sense of 90 days, I believe that shows by the statements from both sides that that was reasonable under the circumstances when the facts were first discovered five weeks after the time of the contentions. Was the accused infringer represented in fact, of course entitled to be represented, but in fact represented at the Moyer deposition? Yes. So they heard whatever he said about the open lamp topic? Right. I mean, they defended him at the deposition. Let me just get some clarification. We've been talking about diligence and counting from the February date from the time of the deposition until the time you filed in May or June. But in the declarations, when you talk about lack of diligence, you reference seven days, and I guess the lack of diligence for a seven-day period, you're counting from the time you found out you couldn't reach agreement with the other side. Well, the original decision by the district court measured the diligence saying that between May 14th and May 23rd, it took us nine days to get that filed. It wasn't until the motion for reconsideration that was filed seven months after the summary judgment hearing that when it was pointed out that two of the three grounds that the district court relied on for prejudice were illusory, that the district court went back and said, oh, well, you had everything you needed to know by February. I don't think there's a dispute that we couldn't have filed our amended contentions the day after the deposition, and the question is during that three-month period, were we continually working in getting this filed? And I believe in light of the fact that the expectation was there was going to be a stipulation that allowed amended contentions based on discovery at the close that that is reasonable under the circumstances, and that's the definition of diligence. Do you understand the final ruling by the magistrate judge to rest entirely on delay as distinct from prejudice to the other side? The ruling in the one that was seven months afterwards said that the central point was that there was unreasonable delay by O2 between the time of the filing or the deposition to the final filing of contentions. I saw that, and what I'm trying to understand is whether that final or later decision by the magistrate judge in effect abandoned as a rationale harmful impact on the other side, unfair prejudice to the other side. The reconsideration decision didn't rely on that, and it's our point here today that the diligence or good cause standard turned on the movement's diligence and prejudice is not a factor to be considered in that. If there was diligence, the fact that it requires the other side to respond or might cause them to lose is not recognizable prejudice anyway. Let me ask you this question. Is it the common practice, if you know, to the extent you know, in cases litigated in the Northern District of California under these very detailed rules for the schedule of discovery, particularly of depositions, to be totally out of sync with the schedule for the filing of final contentions of validity and or infringement? I believe under the local rules in Northern District of California that the situation that happened here where the deadline for final contentions was well before the closed fact discovery is a common occurrence because the final infringement contentions are required 30 days after the Markman ruling. And so the premise must be that each side should be deemed to know all they need to know to finalize their contentions on both infringement and validity just because they have the Markman ruling in hand and they've had 30 days to do whatever else they need to do, it seems like in a lot of cases that wouldn't be so. For example, if the infringement is by a process that goes on in the factory of an accused infringer, you can't go out and buy the product and see, you know, how the widget works and make a conclusion about infringement. In at least some cases it seems like you wouldn't even have the beginning of fully developed infringement or validity contentions until after discovery because the nature and operation of the accused product or process might be unknown to at least one of the parties. So I'm just surprised that the schedule of fact discovery and contentions which in part depend on facts are so disconnected, but it's the common schedule out there? Well, that's why I go back to my original premise. Why it's important that the good cause standard be properly applied and that this court recognize there is a distinction between requiring an early claim construction that will control the remainder of the litigation so the parties know what the claim construction is and the fact that contentions be they invalidity or infringement is dependent on discovery both in the prior art and the accused devices. What order do you take it that we're reviewing? Are we reviewing Judge Wilkins' order or the second Laporte order or both Laporte orders or exactly what? Under this court's holding in the microstrategy case that we cited at the beginning of our argument section where magistrate's decision is adopted by the district court, that's not clearly erroneous. The reasoning of the magistrate's decision is the thing that's on review and I think in the context of a reconsideration motion that's taken into account since she clarified her opinion but I think it's taken from both of the magistrate's rulings. Do you think that the clear error was the right review standard for the district judge to use? With respect to the unreasonable delay, that I think is a fact-finding subject to the clear error. With respect to this court's review, I think it's a legal error with respect to how the good cause standard was applied but abuse of discretion encompasses errors of law, clearly erroneous fact findings and errors in judgment. But the final result here as I recall it was that the infringement complaint was thrown out without any assessment of the merits because of this history that we've been discussing. Wouldn't the decision to throw it out as in effect a sanction against the conduct be a discretionary call by the magistrate judge to make the decision therefore classical abuse of discretion review? Well, the opinion that's on review that resulted in the judgment is the summary judgment of no infringement was based on the fact there was no evidence under either the eyesense of the open lamp theory and that is a no evidence failure burden approved summary judgment that's subject of de novo review. From a standpoint of the underlying reasons for that decision which are based on the exclusion of the evidence, they are subject to abuse of discretion but as pointed out in the last section of our brief where that kind of ruling is tantamount to a dismissal sanction, the standard of discretion is narrowed and the court is required to both consider lesser sanctions, apply lesser sanctions in an attempt to do that. So in this context, the summary judgment should be vacated because of the underlying rulings on the evidence and there should be further proceedings under both theories but to the extent that the evidentiary rulings are both independently wrong on their both basis as either as abuses of discretion, there is an overarching theory that where the result is that we had no evidence to prove our case, that is subject to a tightened standard of discretionary review and that was independently improper in this case. But just to be absolutely clear, you're not challenging the summary judgment. There is no dispute if the judgments with respect to the evidence are affirmed, then there was no, then summary judgment was correct in this case. Well, if the evidence on the i-sense theory and the open lamp theory are excluded, then the district court's finding there's no evidence on the theory is accurate. To the extent the district court went on and said, even if I consider the declarations that were attached to the district court's ruling or to the O2's declaration which dealt with what was called the v-sense theory, that is, if the i-sense theory should have been in the case, then that declaration should have been in the case and the summary judgment is vacated for the same reason. To the extent you go beyond that and look at the merits of the declarations, once again, the only declarations in the case are those that explain why the v-sense theory is identical to the i-sense theory and just a change in units and that should have been sufficient to defeat summary judgment if it had been accepted on the face of the declaration. So to the extent the court went beyond the evidentiary ruling and said, you have no evidence, you lose. But even if I consider your evidence as directed to a wrong theory, that's an independent ground for why that summary judgment was incorrect. But on this question of the supplemental expert declarations, what was the showing of diligence with respect to that? We've asked you a lot of questions about diligence in amending the infringement contentions. What about diligence in submitting the supplemental expert reports? Well, the supplemental expert reports with respect to the i-sense theory, the i-sense theory was not put in the timely filed expert report on May 27th when the dispute arose over whether the open lamp theory... Yeah, but why not? So the problem is it wasn't in the initial expert report. What is the showing as to why it wasn't in there and why it was diligent to submit it a couple of months later? There wasn't an explanation for why it was in there other than the declaration of Dr. Erickson that said, I omitted it because I believe that the open lamp theory was the one that was going to be proceeded on a trial and relied on a trial and therefore, in a sense, it was a premature dropping of it, not realizing or not dreaming the fact that this wouldn't be good cause to allow an amendment to the open lamp theory based on the fact that the information was determined in discovery after the deadline in January for contentions. And the explanation, once it was realized that that's the problem, they tried to put that in and the declarations in support of the summary judgment in a sense are the contents of Dr. Erickson's expert report that would have been supplemented with the i-sense theory based on the information once again learned after the time that the final infringement contentions were filed. How can it be diligent when the other side offered a stipulation, of course it wouldn't automatically bind the court, but offered a stipulation or expressed willingness to have a stipulation about altering infringement contentions when, as I understand it, O2's counsel didn't accept that offer. So there was never an agreement, there was never a meeting of the minds, even as to doing a stipulation. As I understand it, there was an offer of stipulation that was never responded to. Isn't that non-diligence on its face when the counsel then goes ahead and relies on infringement contentions being subject to alteration to the point of telling the expert, don't even bother with the original theory of infringement because we're about to change it, and yet she hadn't accepted the offer. Isn't that a lack of diligence on the face of things? No, because the proposal to exchange amended infringement contentions, and this is at 959, came from MPS. It said MPS feels the stipulation should be reciprocal and that changes made at the close of discovery should be made at the close of discovery so they reflect all changes necessitated by discovery. So that's a recognition by MPS that discovery will affect what the contentions contain. The negotiations back and forth between the parties, that happens oftentimes in litigation in terms of they're trying to do it, but the idea was we are going to come to a conclusion and come to a stipulation by the end of the process. It wasn't until the 14th of May that the other side decided, hey, fact discovery is closed. I don't need to amend my contentions. I don't need to stipulate to yours. Am I wrong in recalling that MPS offered that it wanted to change infringement contentions and that it would stipulate that both sides could? I thought that's what the offer was. That was the offer. And that offer was never accepted, was it? The parties were negotiating over what the scope of the amended contentions would be and I'm not up here saying that there was a binding agreement that both parties reached that should have been enforced as a contract by the court. All I'm saying is in the context of reasonableness by which the diligent inquiry should be examined, that up until the time that MPS revealed that they weren't going to stipulate, the belief was, and I think it's a reasonable, good faith belief, was that there was going to be a stipulation that would take care of the need for having to make a formal motion in a contested setting. But based on what? If I'm the lawyer for O2 and I get this letter from the other side which I'm construing as an offer to stipulate that we can both change infringement contentions and I like that idea and so I act on it and I have some further communication. Where's the further communication here that would justify O2's counsel in thinking that she had a deal in her pocket? It was a reliable deal. She could bank on it week after week, month after month. Based on what? I agree there's not an enforceable stipulation here or a contract. Are there even follow-up communications after the initial offer that would give a lawyer reason to think I can rely on this? This is a solid understanding between me and the opposing lawyer that I and they if they want will be free to alter infringement contentions much later. The exchange of letters between the parties make it clear that MPS was agreeable to exchanging amended invalidity and infringement contentions and the exchange of letters that began in the middle of March that went to the middle of April reflected that but they never got to the scope and then nothing happened until before the close of discovery O2's counsel called and said let's get the stipulation finalized and put together and that was the first time the voicemail came back on the 14th that said we don't need to amend therefore we're not agreeing. But then for a month O2's lawyer was assuming that there was a reliable deal in the absence of any confirmation from the other side that there was still a reliable deal. But the development of the theory and coming up with the O2 infringement theory was still ongoing during that period. The fact that it was more difficult than instead of having a stipulation that required a contested motion doesn't change the fact that the effort that went on during that period of time was reasonable under the circumstances in terms of developing the theory that was provided on the 23rd and timely filed in the expert reports on the 27th of May. All right, thank you very much. We'll restore your rebuttal time since we asked so many questions to try to understand what happened here. Mr. Bagatelle, good morning, welcome. Good morning, may it please the court. Dan Bagatelle for the Appleby Monolithic Power. I'd like to go right first to Chief Judge Michelle's question about how the local rules operate. First of all, it's important to understand that O2 filed this case in its home court and had counsel from the Northern District. Everybody knows the local rules in the Northern District. They require disclosure early on of your theory of infringement. You can change them in light of the claim construction and in light of discovery. I thought the case law in the court was that leave to change them was to be liberally allowed. Not at all, Your Honor. The standard in the Northern District is that you require good cause to amend final contentions. And here's the reason. The final contentions are final contentions. They're not hopefully final contentions. Well, you can say they're final and you have to be right because the rules call them final. But if they're only based on a Markman ruling before most of the discovery has occurred, it's meaningless to call them final. They're distinctly not final except in the simplest case involving a screwdriver or something like that that even I could understand. No, Your Honor. They're supposed to be taking discovery on infringement all along. There are also disclosures by the defendant. Yeah, but even if I'm taking discovery all along, once the Markman ruling comes down, then I've got 30 days to quote finalize my infringement contentions. Even though we agree that I've got another four months of depositions to do. How, in that context, how can the contentions be final in any meaningful sense? Well, Your Honor, first of all, the final contentions are supposed to reflect the discovery you've taken all along. Now, the question in this case is why did O2 wait for six weeks after final infringement contentions to take the Moyer deposition? They had the schematics from June. They had the... But that's not the basis for the decision below that they delayed in taking the deposition. What are you talking about? No, no, no. What I'm saying, Your Honor, is that the question is, were they diligent in developing the entire theory of Open LAMP? But there's no suggestion that they weren't diligent in taking discovery. What the magistrate judge said was they were on notice no later than the 25th of February. She didn't directly address whether they were diligent getting to the 25th. But let's turn to the point after the 25th.  your contentions have been final for a month. You know that the close-of-fact discovery is two months away. At that point, you need to move for leave to amend if you're going to change your infringement. Well, if I hear Moyer's testimony and I think I might have a viable theory, but it needs a lot of vetting before it can be responsibly filed with the court, then I shouldn't act the next day by making a filing. I might be wasting everybody's time. What am I going to say? That I might want to later amend my contentions, but I don't know yet because just yesterday Dr. Dyke said so-and-so and I'm trying to figure out what that means and I've got to question a bunch of more people and get my expert back in the act and all that. I mean, it just doesn't seem reasonable in the general flow of events here to suggest that they needed to file something with the court the next week after Moyer stopped talking. Well, there wasn't a question of filing necessarily the next week, Well, what week do you think was the week beyond which it was just irresponsible and lazy and dumb to not have told the court that you've got new contentions? I believe that during the months of March and April when the parties were discussing the possibility of amending contentions, at that point, at a minimum, they should have explained that they intended to amend their infringement contentions. They say they weren't sure yet and that as soon as they were sure, they told people. Now, I don't know what the exact facts are, but there is a problem, I think, of premature announcement that one might want to alter infringement contentions as finally stated the previous January until there's been a vetting of whether that alteration is going to actually occur or not. And we have not contended that they needed to move on the 26th, but Your Honor- What's your contention as to when they should have done it? What would have been the outside limit in terms of diligence? I think mid-March, that's enough time for their expert to have analyzed the schematics. They had the data sheet. They knew how the open-lamp circuitry worked. He only included two paragraphs in his actual ultimate proposed contentions and expert reports. So this was not something that should have taken forever to do. Moreover, Your Honor- Well, it didn't take forever. It took about two months. Right, and at that time- I think- I don't understand your answer to Judge Dyke's question. Well, no. Your Honor, I believe at that point- When did they know everything they needed to know and have had enough time to develop it, and therefore any day after that was undue delay? What's that date, and what do you base it on? I believe that date was no later than the middle of March. But based on what? You're just pulling a middle of March out of the air? What happened the day before the middle of March that would trigger the duty to file right away? There's no particular date. However, Your Honor, you have to keep in mind what the local rules require in light of changes to infringement contentions, and that includes changes to invalidity contentions. That is, as a matter of right, if the patentee changes his infringement contentions, the alleged infringer gets to change its invalidity contentions. Fine. And that will then reopen some more discovery on that issue. So what? And that's why you need to go to the court and get, either you go in with a stipulation or you have to leave the court. Of course, of course, to prevent abuses in the rare circumstance that both lawyers aren't acting reasonably. Of course, in the end, the court has to control it and manage it. But on the other hand, it seems like it's in the interest of the law to have cases carefully developed and for new learning coming from discovery to be woven into the legal aspects of the case like infringement and validity contentions. And if the result is there has to be a new round of discovery or there has to be a new trial date, why is that so terrible? Why isn't that what ought to happen in such a circumstance? The local rules require that you are diligent in developing and disclosing your theory and that it not be unduly prejudicial to the other side. In this case, we were a year and a half into the case, all operating under the iSense theory. Nobody had a clue on MPS's side that they were going with the open lamp theory. This was a sea change in the critical limitation of the patent. This is the limitation they added in order to get it issued in the first place. So we were going to go back to square one. They knew no later than February 25th that they were not going to be able to support the original iSense theory. If you know that, you have to move for leave to amend. The local rules are very clear. The case law under the local rules are very clear. You can't sit by. Who's got the burden to do what in this context? I mean, if there are two questions, and one is the due diligence and the good cause and the other is prejudice... Correct. Before the magistrate, did you have... Were you required to come in and therefore establish prejudice? Is there a presumption of prejudice to the other side? Did you put on any evidence to show that you were prejudiced? Do you consider that your burden? Two questions there. As to burden, the burden is clearly on O2 as the movement to establish good cause. Second, we did put on evidence of prejudice, and two kinds of prejudice, both to our infringement analysis, non-infringement analysis, and to our invalidity analysis. But you're saying their burden is to show, to prove a negative, to show that you were not prejudiced. Their burden is to show good cause, which under the case law requires a showing of diligence in developing and disclosing one's theory, and that it wouldn't be unduly burdensome to the court and to the other side. We put on evidence. First of all, they failed in their burden on establishing diligence. Moreover, on prejudice, we affirmatively established that... Well, here... Well, let me ask you then on the diligence. Your response to the chief was that you thought March whatever was the date that would have demonstrated diligence. I mean, did you represent that to the magistrate? Did you put on any evidence? Do you feel like you weren't required to put on any evidence as to what would have been diligence under these circumstances? No, I believe their burden was to come forward with evidence that they diligently developed and disclosed the theory, and they failed to meet that burden. It wasn't our burden to come forth with evidence. They controlled that evidence. So did you put on any evidence on the question of when, you know, what reasonable diligence would have required on their part, what the time frame was? What we put on evidence of was that we were unaware of the theory, that it was a major change in the theory, and that it would require going back to square one in the case. Well, how could that be? I mean, if all that happened here was that there was a month's delay, you say mid-March would have been reasonable. And why is this a month's delay a terrible thing here? Because they disclosed this on the eve of Memorial Day weekend, the day before our expert report was due. There was no way for us to prepare. Well, you couldn't put it in that expert report, but the judge could have allowed you to put it in a supplemental expert report. Well, Your Honor, they moved to after having this motion denied, and the court denied that motion. And that's a discretionary standard. She found that they were not diligent. What you're saying is you would have been prejudiced if the judge didn't give you any more time. But you wouldn't have been prejudiced if the judge did give you some more time. We did not state that it would be impossible if we were given three or four months. Here's what would have happened. We would have developed invalidity contentions that responded to the infringement contentions. O2 would have then taken some discovery regarding our invalidity contentions. The whole schedule would have been out the window. So what? The litigation is supposed to get the right result, not race to the finish line like it's a sprint. It's not a race... If things occur in the middle of the game that nobody foresaw, it seems like the process ought to adjust to that. And if it means further discovery or further expert reports or a delayed due date of an expert report, all those things can and should then be allowed. But the Northern District makes very clear in its local rules, in the case law under the local rules, that you've got to be diligent. You can't come up at the last minute and change your theory just because you know you're going to lose in summary judgment. You've got to be prompt in doing that. And in this case, they waited all the way past the end of contentions, past the end of that discovery,  as we were preparing our opening report. That's too late. And at a minimum, it's not an abuse of discretion for the magistrate judge and the district judge who both reviewed this to find that it was too late. Because that's the standard of review. I'm sorry. I don't want you to sit down without addressing the refusal of the district court to allow these supplemental expert reports. My reading of the district court's opinion is that he did this in large part, maybe not exclusively, because he viewed the V-sense and the I-sense theories as being different, correct? That's correct. Right. And so what he says, even though Erickson opined that they were the same, what the judge says is the V-sense theory and the I-sense theory express different ideas. And then the only basis for that is one makes the only-if comparison in terms of units of current and the other in terms of units of voltage. And I looked in your brief for some defense of that ruling. And now maybe I missed this, but I didn't see any defense of that. And I looked at the infringement contentions and to the extent that I can understand this, I don't think what the district court said was correct. It seemed to me that the I-sense theory was also in terms of units of voltage. First of all, is there some place in your brief that you defend that ruling? Your Honor, I think what we explained was her primary ruling was that the V-sense theory was different from the I-sense theory. I understand that you defend that ruling, but not on the ground that the district court ruled. I'm asking you specifically, did you defend that finding that the district court made in that one sentence? I think we've explained- that may be a slightly simpler version of what the- I can explain the V-sense and I-sense theories No, just try to answer my question. Where in the brief do you defend the judge's, what seems to me, perhaps a misconception about a difference between the V-sense and the I-sense theory? Where do you defend that finding? We defended that the V-sense theory was different from the I-sense theory. No, that's not the question. And the voltage- I'm sorry. Go ahead. We did not disagree that V-sense can be described as a voltage value of the I-sense signal. If that's the question, I agree with that. Okay, that's the question. So the judge's ruling here saying that they're different is based on a misapprehension in that one sentence? No, because it's actually- the I-sense theory represents the current through the lamp. That's undisputed. So in that sense, although it can be measured in either a current or a voltage, it is a current-based loop. The V-sense loop- there is no V-sense loop. The open lamp loop measures over-voltage conditions. The V-sense theory was a combination of the I-sense loop and the open lamp loop. And that is because the only way the V-sense theory that Dr. Erickson represented or included in his expert report, it turned on a situation of open lamp. That was the only time in which the change in control from the second signal would occur. I understand all that, but the judge doesn't seem- I mean, I understand what you're saying, but the judge doesn't seem to have based his ruling on that. He seems to have based his ruling on a mistake, on a mistaken apprehension that one is in terms of current and the other is in terms of voltage. Isn't that correct? I think the district court- it would have been nicer if the district court explained her reasoning a little bit in more detail. However, I do think the fundamental ruling was correct. And your Honor's review judgment is not necessarily the one sentence that she used to explain. Well, if she made a mistake as the basis for finding the difference, which appears to be the case, then don't we have to say, well, there may be other differences here which would justify a ruling, but the basis that you gave isn't correct and you've got to go back and rethink this. Well, I think her ruling- her general ruling was that the V-sense theory was not the same as the I-sense theory, and that's very well supported in the record. But not the sentence that we've been talking about. Not in the sense that simply V-sense measures voltage and I-sense measures current. It is a little bit more complicated than that. However, the justification for that was explained very well at the oral argument and in the briefs. And the fact that she had one sentence explaining in shorthand the difference between the two theories, that requires a little more explanation. I don't think it's grounds for reversal. The question is whether the ruling was an abuse of discretion. Because that's ultimately the question here. It's an evidentiary ruling that the round peg of V-sense doesn't fit into the square hole of I-sense. And on that, I think she was absolutely correct and certainly didn't abuse her discretion. Why isn't the alternative of some utility not necessarily to reverse but perhaps to vacate and remand and ask Judge Wilkins to reassess the issue without relying on her plainly mistaken sense of the electricity here? I don't believe that she was mistaken about the electricity. But if Your Honors believe that she had a misapprehension about that, that is within your discretion to do that, of course. I don't think it's necessary or appropriate to do that here because it's very plain that the V-sense theory is not the same as the I-sense theory. I ask Your Honors just to look at the Erickson Report at A22, 27 to 28, compare it with the final contentions at A31, 92. They are simply not even close. We shouldn't be trying this case here. We have no idea what the merits are and it's not of any concern to us what the merits are. Maybe the right answer is a summary judgment of no infringement. I wouldn't know what the right answer is. But the question is whether the process here has been fair and has been rational and that's of concern. All right. Well, I think we have your argument clearly in mind. You've been very clear and articulate about it. Mr. Stanley, you exhausted your time, but we'll give you three minutes for rebuttal only, not, of course, for repetition or new arguments, but rebuttal only of what Mr. Bagatelle has said that you didn't previously deal with. Thank you, Your Honor. One point with respect to taking the Moyer deposition earlier. The claim construction ruling in this case came out on December 27th. The Moyer deposition was taken at the end of February, four months before the close of discovery. I don't think you're going to take the technical expert's deposition before the district court has issued its claim construction. And in the context of this case, I think it was more than timely. With respect to the prejudice, with respect to invalidity contingents, that's one place where I think this court's substantive patent law does inform this court's conclusion because where the claim scope doesn't change, and it's conceded by the other side that the claim scope that the district court issued with respect to the only affiliation is no different reading it on the iSense pen as it is on the OpenLamp pen. There is no prejudice with respect to the invalidity because the scope of the prior art and the scope of the claim doesn't change, so that really isn't a recognizable prejudice. The other point with respect to prejudice. The Johnson case by the Ninth Circuit is the one that explains that good cause turns on the movement's diligence, and that trumps Rule 15 when there's a scheduling order in place. But once the good cause is shown and diligence is shown, then you go to 15, and 15 amendments are liberally allowed, and the prejudice plays in there. But as the Amersham case that's cited in our reply brief points out, prejudice is not that the other side has to respond on the merits. And that's really where the fundamental mistake is in this proceeding, is the fact that when the new evidence came in based on subsequently discovered, or the new theory came in based on subsequently discovered evidence, the district court's focus was how to exclude the evidence as opposed to how to best to accommodate the evidence. And that's why the sanction cases are relevant here because the idea here should be how to best accommodate these theories so that you can further affirm the federal policy of deciding cases on the merits. Where there is good cause, the court's schedule should be the ones that yield making sure that the other side has sufficient time to respond to any new theories. What about my conversation with Mr. Bagatelle about this sentence in the judge's ruling? Did you hear that? I did. Is that correct that the district court made an error there? I believe the district court overruled Ohm's Law in terms of not recognizing that the i-sense and v-sense theories were based on the same thing. Both i-sense and v-sense are measured in terms of voltage. Now the key point here is there are no declarations in opposition to the summary judgment dealing with the v-sense theory. And the comparison of... I mean, this is just one more error in terms of having the contentions be the end-all be-all of this case because the declarations are what the expert report would have been on the i-sense theory and the fact that there's changes in wording or further development based on the discovery with respect to that, those declarations, one should have been accepted because they were the non-movement declarations, but they do explain in detail why the i-sense and the v-sense theory are the same thing and that is the determination that should be done on the merits. And therefore, I think this case should be remanded to allow both the open lamp and the i-sense theory to be developed and decided on the merits. All right. We thank both counsel for a very clear, forceful argument. We'll take the appeal under advisement.